Next case for consideration is Lazy S Ranch Properties v. Valero Terminaling and Distribution, docket 23-7020. Counsel, we're prepared to hear your argument. Thank you. May the words that I present to this court be pleasing to you. Oh, I'm sorry. I thought I was too loud and my papers were loud. I apologize, Your Honor. I was just praying that you'll enjoy what I have to say here today, Your Honor. My name is David Page, and I represent the Roos Ranch, or Roos Ranch Properties. And one of the rancher owners is in the courtroom today, Cinco. His name is Cinco, but that's not his real name. His real name is Robert Charles Roos V, hence the nickname Cinco. And it also tells us a little bit about this family. This is a five-generation family rancher. They started in San Antonio. In the late 60s, they moved to Ardmore, Southern Oklahoma. And they bought this ranch, which was the second ranch they bought in Oklahoma, as a legacy. The Lazy S Ranch was purchased to be a legacy for Cinco's children and his grandchildren and the next grandchildren. And so that tells you a little bit about the plaintiff in this case. So what I'd like to do is talk a little bit about the plaintiff, then talk about the defendant, then talk about what I think this case is about in the sense of context. It would be helpful in addition, or maybe instead. How did the district court err here? How did it err? Yes. We didn't get a trial. This is the first time. And why? Why precisely did the district court err? Why precisely did the district court err? Well, I heard a comment earlier about, you know, making decisions about the credibility of a witness. That's true for a witness, but not on an affidavit or a report or reading a deposition. When I judge your credibility, Your Honor, I'm looking you in the eye. I have a chance to judge your facial expressions and how you respond to my response to you. Credibility must be based on an opportunity to hear the witness speak in the court. And that's the problem. That's one of the problems. One of the mistakes that Judge Brooms made was that he decided he could make a credibility judgment on a summary judgment motion. What disputed facts did he resolve against you? Whether there was pollution or not. What the level of pollution was. Whether anybody got sick. Whether anybody could smell it. Whether there was any damage to the property. Those are some of the ones I can think of. Well, he relied on the samples, right? The earth and water, the soil. Yeah, he did. Was he wrong to do that? That's not the way I would phrase the question, Your Honor. The problem here is that he thought screening levels and levels for the Safe Drinking Water Act and other environmental programs, that can be perfectly appropriate in other environmental cases. But not this case. This is a common law case. This is a case about trespass, nuisance, maybe negligence too, on private property. What is the standard for nuisance under Oklahoma law? If we're not going to use the regulatory test as a guide here, what is the black letter principle? In Oklahoma, the jury decides if it's a nuisance or not. And that was another mistake that Judge Brooms made. He decided that he could decide what a nuisance is. And under Oklahoma law, that's not the case. And that was another problem in this case. Because we had a Kansas judge, and I'm not blaming the court system. We've had some difficulties in Oklahoma after we decided to give the Native Americans and Native peoples an opportunity to be heard as they should. But the problem here is we had a Kansas judge, and I asked for the Kansas judge because I wanted to get this case to trial, who didn't understand Oklahoma nuisance law. But really what I think is the problem is that the decision was made out of context. See, I like to read, and I also like to teach. And when you teach and you read, you have two things you have to look at. They're both contextual. One is the literary context, and the other is the narrative context. Literary context is, what's the story about? And narrative context is, at what point in the story are we? So we were in the story, and there hadn't even been, well, there really hadn't been any oral argument on the law. There were no trial briefs to give the judge an opportunity to understand. Now, there were summary judgment briefs. You're absolutely right. But there was no oral argument on summary judgment. I appeared before Judge Brooms exactly two times. Once was over the phone, and it was about a 15-minute status conference. The second time, he invited us to his courtroom, but he didn't require us. Well, I said, Your Honor, I want to come up and see your courtroom, and I want to see you. I mean, I didn't say that vernacular, but that was important because I want to be in that courtroom, and I want to see what the case is going to look like when we try it. Are you contending that the district court can't grant summary judgment in a nuisance suit? No. OK. Of course not. All right. And as far as nuisance goes, I assume you're relying on Oklahoma statute Title 50, Section 1? Well, yes, but also Bristow versus—well, the cases are in my briefs. I quite frankly wasn't going to—I can pull it out. I'd be happy to. But there's the Oklahoma Court of Appeals case. It was involving—actually, I'm so old, I was actually kind of involved in that case. But it had to do with whether or not there was a nuisance with regard to the drilling of an oil and gas well in the Oklahoma City area. And the Court of Appeals in that case summarized, I believe quite accurately, the law of nuisance in Oklahoma. The common law act of nuisance, which the statute you mentioned, Your Honor, I think is close to it. So the case law, since this is a common law case, should be looked at most closely out of Oklahoma. And that case said quite clearly, if I recall it correctly, that the jury decides if there was a nuisance or not. By what standard? Didn't they also decide that foul odors constitute a nuisance? Thank you, Your Honor. That's exactly correct. And so there were foul odors in this case. Could you answer my question as well? Yes, ma'am. Could you remind me what it is? Sure. Let's assume that nuisance is usually a jury question. What is the standard that we're looking at? Is it the substantial interference with the use and enjoyment of your land? Yes, ma'am. That's what it says. But then what substantial is is a jury question, too. I mean, when you read the case law and you read the cases, you realize that the jury gets to decide what's the substantial interference. We have to present, that is the plaintiff or the party seeking recovery in a nuisance, we have to present evidence of loss of use and enjoyment. And I believe we presented that here. Mr. Roos, Cinco's father, said, one of the things I want to do with this property is let other people use it. They don't let people hunt it. It's there. Well, you can take shots, but it has to be a picture. It's an iconic ranch. As you're coming up I-35 from Dallas and you're heading towards Norman, let's say you're going to a football game, on the right-hand side, you come up to a mountain area. And the mountains are called the Arbuckle Uplift. And it's a very unusual thing for Oklahoma because Oklahoma doesn't have a lot of mountains. But this uplift, what it did is, is that ancient geology, there was a push-up from underneath the earth and it broke all the limestone and sandstone. And it comes up like this, so it creates fissures and cracks in this geology. And then, when the rain comes down, the water goes into those fissures and cracks and creates pools. So, I've got five minutes left. It's been fun. Let me tell you a few things. I believe this is a case about pollution. And we need cases like this to be heard by this court. Because this is a difference between two different cultures. And I drive a Chevy Silverado pickup truck, so I need gasoline from Mr. Bennett's plant. But I also like steaks. And I don't care if my gasoline gets a little dirty, but I do care whether or not my steak is dirty. Or whether my steak, the cow, has been breathing in this air. And over time, Judge Rossman, the standards or the abilities to measure get better all the time. We're measuring, when I started practicing all those parts per million, then parts per billion, then, now we're talking per trillion, and now we're talking about nano-something. I don't even know what it is yet. And it's amazing. So, what we have here is we have cases that are being misapplied. They're being misapplied because, and I see this around the country, and for this court to hear this, it's very important. We have courts applying the Safe Drinking Water Act, which applies to a specific context. It applies to a public water supply where the act was passed with three considerations in mind. One is sickness, or the concern about people getting sick or harmed, injured, by a pollutant in the public water. But there's also engineering feasibility and cost. Counsel, may I direct your attention? Sure. We don't have a lot of time left. You agreed that the standard here is substantial interference with the use and enjoyment of property. Yes. And you said that carrying your burden on summary judgment, you were presenting evidence to support that. Yes. What is the evidence that you presented at summary judgment that you contend now on appeal the district court erroneously rejected? The court rejected the testimony of both Cinco Ruz and Charles Ruz, that they are not using the ranch as they intended. And that's use. And they don't enjoy the ranch as they intended. And that's enjoyment interference. So specifically, they're not letting people get around that one spring because they have the smells there. That's where the contamination is found. But they also have four other springs that are used regularly on the ranch. And they testify that they put cleaners, filters on those. And they're also concerned about just drinking the water at all. They also want to lease the ranch because farmers don't just make money doing cow-calf here. They want to lease the ranch. And they've decided not to lease the ranch as much. They also have been affected by water sales. Is there any evidence in the records, more evidence that the district court could rely on, about attempted water sales or other uses that you're describing that the buyer refused because of pollution? We have evidence from an expert that's probably one of the most profound, Dr. Boyle, strongest and most strong understandings of water markets. He's a professor at Virginia Tech of real estate. Is that Dr. Fisher? No, Dr. Fisher's the geologist in the hydrogeology. What's this guy's name? Boyle. I'm sorry. I speak slow, sir. I'm sorry. We have three experts on liability. And we have three experts on damage. So the liability, we have Dr. Fisher, who's a hydrogeologist. We have Dr. Eade, who can speciate. He can identify whether the contaminated materials that were found from Valero were either fresh or old and whether they were refined or not. And then we had a pipeline expert, Trey Miller, who also testified that there was a problem with that pipeline. You said Kevin Blackwood, didn't you? Well, he was a non-report expert. That's correct. And I neglected to note him, but he also testified concerning the cavers who were afraid to go in the caves because the smell was so bad. Well, that's Thompson, this belonger. Well, that's his friend. But they both are cavers. They belong to the same group. Okay, but you're saying there was evidence there that should have gone to a jury and not summary judgment. Absolutely. Absolutely. Let me finish by this because I know- You have 16 seconds. Thank you, Your Honor. So when I came in this morning, it's been a while since I've been here, but reason is the soul of the law. G.K. Chesterton, thinker and writer, said the most uncommon thing is common sense. This case needs to go back to the court, to Judge Brooms. And this court should direct him to set the case for trial. And we'll spend the spring, I guess, maybe in Wichita, Kansas. Thank you, Mr. Page. Thank you, Your Honor. Morning, Mr. Bennett. Yes, thank you, Your Honors, and may it please the court. We believe that Judge Brooms' opinion should be affirmed and that he did not decide any disputed question of material fact and that it's extremely well-reasoned on both grounds. The first ground being that there's a pipeline leak case where there's no evidence of an actual leak. They haven't found- Well, they didn't find a 3,000 or 30,000-gallon leak two miles away several years ago. They did find that, and they fixed it. They finally found it when the ranch had dug a hole and found it. Well, they do the pigging and the inspections and the aerial inspections. But at this point, we haven't got to that point, have we? That leak that you're talking about- We have people that smelled it. We've got people that analyzed it. We've got experts that were spelunkers and couldn't map it because of the odor. We've got ample evidence, it seems to me, that should have gone to a jury and not on affidavits. But the issue, I think, is phrased by your people was that it had to come up to a water quality standard or some type of higher cancer standard. Well, let me respond to two points that you just made, Judge Kelly. The first would be what is actually in the summary judgment record on odor. And on odor, as Judge Broom said, the only statement and the argument made about damage, their focus on damages was resale, water rights, remediation. The only evidence they cited to on odors is on page 27 of their summary judgment opposition, which made one reference to a gaseous odor, citing one passage that Judge Broom's looked at closely and said it didn't, as a matter of law, rise to a substantial level. That's on page— Well, are you suggesting that's the only evidence and that Mr. Thompson did not testify or by affidavit that he couldn't get in to map the tool cave area because of the severe odor and that his people had to leave? I— What about the—Mr. Roos's testimony and Mr. Fish's—Dr. Fish's testimony? What I would say to you is the block quote— That's the only—you said there's only one evidence. And I agree that there is only one evidence in what was put before Judge Broom's in summary judgment. These people were not put before him? Absolutely not. The block quote of Mr. Roos V that they cite in there about headaches and all of that problems was not put before the district court judge. The only statement—it's page 27 of their opposition brief, which is volume 5, page 32 of the appellate appendix—says that they only cite one deposition passage from Mr. Roos IV, page 176 at 10 through 20, and do not quote, cite, recite this evidence to the district court in the context of arguing their damages at all. And if you look at Judge Broom's reconsideration of opinion, he has a really insightful, I think, observation where he says, okay, I thought you were arguing about your experts, but let's look at what you argue. Well, counsel, what about plaintiff's statement of disputed facts? I guess it's five appellant—apps 7-26. Several record references of testimony of multiple individuals attesting to the small smell of property—that's at page 9—and a reference to headaches was right in the record. The reference to headaches is the description of the testimony of Mr. Roos IV, where he said only that he was going and looking and investigating the case. Of course, this is a strange case because normally residents testify, I was on my porch and I couldn't have my party and all of that. The testimony they're talking about are their retained experts or cavers from decades ago, and the only testimony they cited for Mr. Roos IV is where he says, well, if you stay there long, it'll give you a headache. It doesn't say he actually got one, and he said he was visiting with his experts, and it's not natural. That is the only testimony that they presented in their argument section of their summary judgment on damages at all. And they have whole block quotes in both of their briefs where they never cited that to the district court judge. And the district court judge on reconsideration specifically held that here is what you cited. I've read that. It's insufficient. I am not, under the reconsideration rules or the summary judgment rules, required to root around in the record and look for other things that you didn't raise in the procedural correct way. Counsel, what was, in your view, before the district court, if we spot you what you're arguing right now, what was, in fact, presented to the district court on summary judgment to support the nuisance standard under Oklahoma law? And you agree it's not regulatory, right? Right, and the judge said that twice. And so what was presented then? On the legal standard, it's the substantial interference, but the only thing presented to show that odor. Odor, we're putting to the side. I want to have your perspective on what was the evidence before the district court on injury? On injury. The evidence on injury came in, I believe, really three primary ways. One was their value of their property was diminished by this. The second was we can't sell the water rights. And the third is we have to pay to remediate. They made a passing reference on page 27 on summary judgment of their opposition about odor causing them to make it unswimmable and undrinkable. That's one clause of one sentence there, and that was before the district court in the context of arguing injury. And Judge Broome specifically went then and looked at that passage and read it and pointed out that it doesn't support, like they argued to him, it causes stress. There's no reference to stress there. They reference headaches. He doesn't say he got a headache. He said, I think if I stayed there longer, I would get one. And then Judge Broome's looked at the undisputed evidence of the unbelievably low levels. I mean, not only are we not meeting the indoor air, exceeding the indoor air quality set by the EPA, we're orders of magnitude low on all of those things. And he said that that is a matter of law, citing cases that does not reach the level of substantial interference with the use of property. But you would agree that Oklahoma law doesn't require there to be some sort of minimum in order to proceed under a nuisance law, under the common law. I think that the two standards that I believe that, as Judge Broome's, I think, held, which is it's relevant to look at a standard that's been defined to say that this would affect you because there'll be regulations that affect it. But I agree with him, the judge, that the standards are not dispositive, that instead the standard is the substantial injury and inability to use the property. And do you think that the district court sort of viewed the evidence presented through the right lens, that the regulatory framework was not on his mind? The regulatory framework, I think, is on his mind because one thing the regulatory framework shows you is let's pretend we were inside and in a house where the standards could be very strict. And that's the EPA air standard and every measurement here was so far below that. I think that's relevant to whether this really does affect your, substantially affect your ability. I think if you look at the soil samples with 62% being non-detect and the others being complete, you know, completely, I think he said 500 times below the standards, it's relevant to whether there really is a substantial interference. And I think he handled it exactly right, which is to say common law nuisance, the standard is what the standard is under the case law. It's one way you can prove a nuisance is look how high all these levels are, or one way you can disprove a nuisance is to say, look how low all these samples are. But it's not, it's not like it's dispositive. And I think that's exactly the right way to look at it. And that's exactly how Judge Brooms did it. Well, can the district court then decide that himself? Oh, no, this isn't high enough, even though it's a foul odor? Instead of saying, let's jury determine it? Yes, I think that he can. I think that we cite many cases where, for example, in the Wilderwood case from the Fourth Circuit, they directed a verdict where the levels of contamination... It took it away from the jury and that you have to have substantial annoyance and the damage needs to actually have some sort of scientific basis that it can't be used. But what I think is happening here, to some degree, is they make one minor argument on page 27 of their summary judgment opposition. They then add a bunch in reconsideration, which Judge Brooms didn't consider under appropriate rules. So I don't, and this court has said in Perez and other cases that you don't consider things that wouldn't be considered. And then in the appellate brief, they're quoting things that not only weren't quoted to the district court judge, but weren't even in the summary judgment record. Well, can you help me on one issue? In opposition to the motion for summary judgment, didn't the plaintiffs interview or have before the court a statement of disputed facts? Yes. And didn't that statement present nine different record references of testimony by multiple individuals attesting to the strong smell? You're talking about the response to the disputed fact nine. Now, did it or not? Yes, it's disputed fact number five, but I would dispute the characterization that was given of it. For example, one of the things that's cited in that response is Blackwood deposition. You saw something leaking out of that? Not in the deposition. I'm talking about in the statement of disputed facts. I am, too. Okay. And the statement of disputed facts quoted that deposition testimony. Judge Brooms went and looked at that testimony, and he found out, and it's 100% truthful, that what Mr. Blackwood was talking about there, it's footnote 12 in reconsideration, where he says there's what he says is he saw a fluid leaking out of it. He doesn't remember where it was, when it was, or what it was. So the judge could just make that decision on the bare paper. It's straight out of the deposition, undisputed fact. And what Judge Brooms said was, I am relying on the undisputed facts as set forth, and if they're really disputed, they're disputed. But also, if they're not properly disputed, I'm not recounting all that, but he actually does explain why, for example, this Blackwood testimony doesn't carry the day. Also, the other testimony is from experts who have been hired to come in. I mean, it's not a landowner or a neighbor or anybody like that coming in. They cite Fisher and Blackwood. Some of the testimony that they quote is from the 1980s, where someone was going caving in the 1980s, which is decades prior to our purchase of the refinery. And what I think the judge did that was 100% correct was, okay, you've got your statement of facts, but they move for summary judgment on the idea of no injury. You have a section of your brief that goes for many pages about damage and injury. The literal only thing that you cite or say in that is a clause from Mr. Roos, the fourth deposition. I read that, and it doesn't establish headaches, and it doesn't establish stress. It doesn't even mention stress. What about water sales? About water sales, I think the issue on the water sales is, of course, they have admitted that they can sell the water, that there's no restriction on that imposed by anybody. They also applied for a water permit, and it's an undisputed fact that they were asked on the application side, is there any pollution, and they said no to that in their application. And we cite cases, and Judge Broom cited cases that say, look, if you can sell the water or you can do what it is you want to do, but you have a unique or differing view of that, that's not real damage. That's just your, or a substantial impairment of your ability to do water sales. What do you think would qualify, as you're running out of time, would suffice to raise a genuine issue of materials fact about substantial interference with use and enjoyment? I think that they would have to, like, this is all setting aside, of course, that they haven't shown that we cost it at all. But I think that they would have to show that there's actually some hydrocarbon that can be traced to our pipeline that actually from some standard shows that they can't do something. Or, and they have admitted that they don't have that evidence, or in addition, you need evidence like in the case that they cite where there was a desiccation plant next door, where neighbors were saying that, you know, they're trucking in the carcasses, you can't have parties, you can't do, that's the classic nuisance case, which is I can't use my house. What they're citing in response is they're going and digging and looking with their experts, trying to find a fractional trace element of this and then saying, oh, well, I can smell it. I don't think that that carries today. I think the classic nuisance case is the one like where you're doing some operation next door, and it's affecting your ability to sit outside, it's affecting your ability to do what you want to do in some measurable way that is substantial. Well, Dr. Eade found the petroleum distillates on the ranch and concluded that they were not more than three to six months old. That was a fact that was produced. Doctor, I don't believe that, I don't know if they've cited that to the district court, but Dr. Eade also testified that he doesn't know where the leak came from. He doesn't have a way to explain how it got from the pipeline to the ranch, and Dr. Eade admitted that the age of the gasoline isn't indicative, the weathering of the gasoline is not indicative of the age where it was produced. I believe there was evidence in there that the court just decided on his own determination of who to believe on paper. I don't agree with that because what he said on that was not that I'm believing this or I'm believing this, but that Dr. Eade and Dr. Fisher did not exclude the idea. This is right next to a highway. This is on summary judgment, counsel. This is summary judgment. This is not a trial. I would just say that what I would urge the court to do is to look at what was actually argued to Judge Brooms and see if he really made a mistake because I think what's happened is a lot of things have been thrown in on reconsideration and on appeal that were not presented to him in the way that Rule 56 requires. Thank you. Thank you. Was there a rebuttal time or no? All right. Okay. Well, counsel went a minute over, so I'll give you two, but I'm going to hold you to it if you want to, Mr. Page. Yes. I'd like to make a couple of observations. One minute. Two minutes. Go ahead. Thank you, sir. I think even good judges sometimes make mistakes, especially when a judge is one from a state that is asked to apply the law of a different state. That's a problem. That was a problem because, as you heard, Mr. Bennett, it was kind of like what I read in the decision of Judge Brooms and then on reconsideration, judgment and reconsideration. It was a circular argument. I'm not going to look at regulatory standards, but then when he discounts, for example, expert E, he looks at regulatory standards. That's circular. The other observation is that I try environmental cases. I get to do oral argument, which is fun, but usually I try environmental cases. They take multiple experts. One expert doesn't tell the whole story. We used Dr. Fisher and then Mr. Blackwood because he was an expert also as a geologist and a caver, and we linked him with Dr. E. All three of them have testimony that was coordinated. Was it before the court? Yes, sir. It was. Was it as clear and precise as if I would have liked it? No. But that's because I got hired three months before we were going to go to trial. I get all these experts in, and then the judge extends it to May. I'm ready to go to trial in May, and then Valero asks for an extension, and then all of a sudden it has extensions. So I thought, okay, the summary judge is not going to be anything. Every case I've ever had decided on summary judgment based on credibility of witnesses, as Judge Phillips, she just pointed out. I mean, the jury gets to make that decision, or the judge at least has heard all the evidence, and he can take it away. Thank you. Thank you, counsel, for your arguments. The case is submitted, and counsel are excused.